UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Yi Xin Zhao, Cheng Bin Shang, Bing Wang, Zhi Qiang Wang, Teng Zuo, individually and on behalf of all other employees similarly situated, <br><br> Plaintiffs, <br><br> - against - <br><br> Kira Sushi 2, LLC, Hsiang Ya Chiang, Kira Zheng, Kevin "Hailong" Chen, and Jason Zheng, <br><br> Defendants. | Case No.: <br><br> **COLLECTIVE ACTION COMPLAINT** |

Plaintiffs Yi Xin Zhao, Cheng Bin Shang, Bing Wang, Zhi Qiang Wang and Teng Zuo ("Shi" and "Wang" respectively, or "Plaintiffs" together), on their own behalf and on behalf of all others similarly situated employees, by and through their undersigned attorneys, hereby file this amended complaint against Defendants, Kira Sushi 2, LLC, Hiang Chiang, Kira Zheng, Kevin "Hailong" Chen, and Jason Zheng,  John Doe and Jane Does # 1-10 ("Does") (collectively "Defendants") allege and show the Court the following:

## NATURE OF THE ACTION

1.      Plaintiffs allege, on behalf of themselves and all other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to: (i) unpaid minimum wages from defendants for work performed under 40 hours for which they did not receive statutory minimum wage pay; (ii) unpaid wages for overtime work for which they did not receive overtime premium pay, as required by law; (iii) illegally retained gratuities earned; (iv)

expenses incurred on behalf of Defendants; (v) liquidated damages, declaratory relief, costs, interest and attorneys' fees pursuant to the FLSA, 29 U.S.C. §§201 et seq.; (vi) reasonable attorney fees and costs.

2.    Plaintiffs further complain, on behalf of themselves and a class of all other similarly situated current and former employees of the Defendants, that they are entitled to: (i) unpaid minimum and unpaid wages for overtime work for which they did not receive overtime premium pay, as required by law; (ii) illegally retained gratuities; (iii) liquidated damages, costs, interest and attorneys' fees pursuant to the CMWA, Conn. Gen. Stat. §§ 31-68 - 72.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 201 et seq. and 28 U.S.C. § 1331.

4.    This Court has jurisdiction over the State Law claim pursuant to 28 USC § 1367 since it is so related to the FLSA claim that it forms part of the same case or controversy.

5.    This Court has personal jurisdiction over Defendants because they are engaged in business within the State of Connecticut, and the events complained of occurred in Connecticut.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and pursuant to 28 U.S.C. § 1391(c) because Defendants Kira Sushi 2, LLC, Hsiang Ya Chiang, Kira Zheng, Kevin "Hailong" Chen, and Jason Zheng are subject to personal jurisdiction in the State of Connecticut.

## THE PARTIES

7.     Plaintiffs were, at all relevant times, adult individuals residing in Queens county, New York.

8.     Plaintiff Zuo was employed by Defendants from April 1, 2014 to present, as a delivery man at Kira Sushi.

9.     Plaintiff Zhi Qiang Wang was employed by Defendants from October 2012 to February 28, 2017, as a delivery man at Kira Sushi.

10.     Plaintiff Zhao was employed by Defendants from April 2015 to present as a delivery man at Kira Sushi.

11.     Plaintiff Shang was employed by Defendants from September 2013 to present as both a helper and delivery person at Kira Sushi.

12.     Plaintiff Bing Wang was employed by Defendants from November 9, 2015 to present as a delivery person at Kira Sushi.

13.     Upon information and belief, Kira Sushi 2, Inc. is a company registered in Connecticut in 2005.  Hsiang Ya Chiang is an owner and operator of Kira Sushi 2, LLC located at 4 Lewis Court, Greenwich, CT 06830. Kira Sushi 2, LLC, Inc. is at all relevant times an employer of Plaintiffs under state and federal law.

14.     Upon information and belief, Defendant Kira Zheng is an owner, officer, shareholder, and manager of Kira Sushi 2, LLC. Upon information and belief, at all times relevant to the allegations herein, he had the power to hire and fire employees at the restaurant, establish their wages, set their work schedules, and maintain their employment records.

15.     Upon information and belief, Defendant Kevin "Hailong" Chen is an owner, officer, shareholder, and manager of Kira Sushi 2, LLC. Upon information and belief, at

all times relevant to the allegations herein, he had the power to hire and fire employees at the restaurant, establish their wages, set their work schedules, and maintain their employment records.

16.     Upon information and belief, Defendant Jason Zheng is an owner, officer, shareholder, and manager of Kira Sushi 2, LLC. Upon information and belief, at all times relevant to the allegations herein, he had the power to hire and fire employees at the restaurant, establish their wages, set their work schedules, and maintain their employment records.

17.     During the times relevant to this Complaint, Defendants have employed more than ten (10) employees and generated more than $500,000 in revenues every year from 2012 to the present.

18.     Defendants qualify for and are subject to both traditional and enterprise coverage under the FLSA for all the relevant time periods contained in this Complaint. Said differently, Defendants are subject to the Fair Labor Standards Act.

19.     At all relevant times Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

20.     Defendants employed the Plaintiffs as employees within the meaning of FLSA § 203.

## COLLECTIVE ACTION ALLEGATIONS

21.     Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendants since January 2015 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA and who were not paid wages for

all hours worked, minimum wages, and overtime compensation at rates not less than one and one-half times their regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

22.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are at least five (5) members of the collective action during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claim.

23.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

24.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

25.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

a.      whether the Defendants employed the Collective Action members within the meaning of the FLSA;

b.      whether the Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Collective Action Members;

c.      what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

d.      whether Defendants failed to pay the Collective Action Members wages for all hours worked as well as overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

e.      whether Defendants willfully failed to reimburse Plaintiffs for the expenses related to performing working duties for Defendants;

f.      whether Defendants willfully retained part of the earned gratuities from Plaintiffs and the Collective Action Members in violation of FLSA;

g.      whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

h.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

i.      whether Defendants should be enjoined from such violations of the FLSA in the future.

26.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

## STATEMENT OF FACTS

27.    At all relevant times, the defendants operated Kira Sushi 2, LLC d/b/a Kira Sushi at 4 Lewis Court, Greenwich, CT 06830.

28.    Upon information and belief, Defendants employed at least five (5) employees at any one time in their restaurants. Plaintiffs and a large number of Defendants' other employees have not received their: (i) wages for all hours worked, including minimum wages; (ii) overtime pay as required by the Fair Labor Standards Act and CMWA, Conn. Gen. Stat. §§ 31-68(a), 31-72; (iii) expenses incurred on behalf of Defendants; (iv) illegally retained potion of gratuities.

### Plaintiff Teng Zuo

29.    Plaintiff Zuo was employed by Defendants from April 1, 2014 to present, as a delivery man at Kira Sushi.

30.    As indicated by his paystub, from the year of 2015 to present, Plaintiff Zuo was paid $6.75 per hour for the first forty hours during a work week, $11.43 for part of the hours exceeding forty. Plaintiff Zuo was typically paid weekly by check. However, Plaintiff Zuo was not fully paid for all of the overtime hours listed in Paragraph 31.

31.    Defendants required Plaintiff Zuo to work according to the following schedule: Monday through Friday: 11:30 a.m. to 10:30 p.m.; Saturday: 4:10 p.m. to 10:45 p.m.; he took Sunday off. In addition, Plaintiff was also required to transport ingredients and drive commuting employees under the following schedule from Monday through Friday: he had to upload the ingredients (for example vegetable, meat and fish) to his vehicle at 10:25 a.m., pick up the first employee at 10:45 a.m. and to arrive at the restaurant by 11:30 a.m.; after work, he dropped the last employee at approximately 11:00 p.m., This resulted in a total work week of

approximately seventy hours and forty minutes (71.67 hours).

32.     Plaintiff was required to work for Defendants well in excess of forty (40) hours per week, frequently about seventy-one hours (71 hours) per week respectively, yet Defendants failed to pay Plaintiff all overtime compensation for hours he worked in excess of forty hours per week.

33.     Plaintiffs and each of delivery workers typically had a brief break from 3 p.m. to 4 p.m. Monday through Wednesday, and from 4 p.m. to 5 p.m. on Thursday and Friday, but they still had to stop eating and do delivery duties during the break if there were new orders coming in. In other words, the break is not uninterrupted.

34.     Defendants illegally retained Plaintiff Zuo's tips on regular basis: Defendants deducted from his tips approximately $60 per week from April 1, 2014 to December 2016; Defendants made a $50 "House Account Deduction" from his and other tipped employees' tips every week from January 2017 to present.

35.     Plaintiff Zuo and other tipped employees also spent more than 20% of their working time every day doing side works.

36.     To perform the delivery duties, Plaintiff Zuo spent on his own expense about $60 per week on gas, oil change per week, at least $2,000 per year on repair and maintenance of the vehicle, and $500 per year on traffic or parking tickets.  At all relevant times, the Defendants had a policy and practice of giving a $50-per-week or $5-per-time stipend if Plaintiff drove employees.

***Plaintiff Zhi Qiang Wang***

37.     Plaintiff Wang was employed by Defendants from October 2012 to February 28, 2017, as a delivery man at Kira Sushi.

38.     As indicated by his paystub, from the year of 2015 to December 31, 2016, Plaintiff Wang was paid $6.25 per hour for the first forty hours during a work week, $10.87 for part of the hours exceeding forty; from January 2017 to February 28, 2017, Plaintiff Wang was paid $6.38 per hour for the first forty hours during a work week, $11.43 for part of the hours exceeding forty. Plaintiff Wang was typically paid weekly by check. However, Plaintiff Wang was not fully paid for all of the working hours listed in Paragraph 39 to Paragraph 40.

39.     From October 2012 to May 2016, Defendants required Plaintiff Wang to work according to the following schedule: Monday through Thursday:10:10 a.m. to 9:30 p.m.; Friday: 10:10 a.m. to 10:30 p.m.; Saturday: 3:30 p.m. to 10:00 p.m.; he took Saturday off. In addition, Plaintiff was also required to transport ingredients and drive commuting employees under the following schedule from Monday through Friday morning: he had to upload the ingredients (for example vegetable, meat and fish) to his vehicle at 9:00 a.m., pick up employee s at 9:30 a.m. and to arrive at the restaurant by 10:10 a.m.; after work, he dropped employees at approximately 10:10 p.m., This resulted in a total work week of approximately sixty-eight hours (68 hours).

40.     From May 2016 to February 28, 2017, Defendants required Plaintiff Wang to work according to the following schedule: Monday through Thursday:10:10 a.m. to 9:30 p.m.; Friday: 10:15 a.m. to 10:30 p.m.; Sunday: 4:10 p.m. to 10:10 p.m.; he took Saturday off. Plaintiff Wang was not asked to drive during this period. This resulted in a total work week of approximately fifty-eight hours and fifteen minutes (58.25 hours).

41.     Plaintiff was required to work for Defendants well in excess of forty (40) hours per week, frequently about fifty-eight hours (58 hours) per week respectively, yet Defendants failed to pay Plaintiff all overtime compensation for hours he worked in excess of

forty hours per week.

42.     Plaintiffs and each of delivery workers typically had a brief break for an hour Monday through Friday, but they still had to stop eating and do delivery duties during the break if there were new orders coming in.  In other words, the break is not uninterrupted.

43.     Defendants illegally retained Plaintiff Wang's tips on regular basis: Defendants deducted from his tips approximately $50 to $60 per week throughout Plaintiff's entire employment period.

44.     Plaintiff Wang and other tipped employees also spent more than two-and a-half (2.5) hours of their working time every day doing side works. For example, he spent one-and-a-half hours doing side works like refilling the sauce bottle after he arrived at the restaurant; he also spent one hour before lunch doing side works.

45.     To perform the delivery duties, Plaintiff Wang spent on his own expense about $60 per week on gas, oil change, $1,500 to $2,000 per year on repair and maintenance of the vehicle, and $500 per year on traffic or parking tickets.  At all relevant times, the Defendants had a policy and practice of giving a $50-per-week or $5-per-time stipend if Plaintiff drove employees.

**_Plaintiff Yi Xin Zhao_**

46.     Plaintiff Zhao was employed by Defendants from April 2015 to present as a delivery man at Kira Sushi.

47.     As indicated by his paystub, from April 2015 to December 31, 2016, he was paid approximately $5.78 per hour for the first forty hours during a work week, $10.27 for part of the hours exceeding forty; from January 2017 to present, $6.38 for the first forty, and $11.43 for part of the hours exceeding forty. However, Plaintiff Zhao was not fully paid for all of

the working hours listed in Paragraph 48 to Paragraph 52. Plaintiff was typically paid weekly by check.

48.     From April 2015 to April 2016, Defendants required Plaintiff Zhao to work five days with Wednesday and Thursday off according to the following schedule: Monday and Tuesday: 10:15 a.m. to 9:15 p.m.; Friday: 10:15 a.m. to 10:50 p.m.; Saturday: 11:00 a.m. to 10:30 p.m.; Sunday: 11:15 a.m. to 9:30 p.m.

49.     In addition, Plaintiff was also required to drive commuting employees under the following schedule from Friday night through Sunday morning: he had to pick up the first employee at 10:15 a.m. on Saturday and 10:15 a.m. on Sunday; after work, he dropped the last employee at approximately 11:45 p.m. on Friday and 11:30 p.m. on Saturday.

50.     Plaintiff Zhao was allowed an hour break from 3:00 p.m. to 4:00 p.m. on Monday, Tuesday, and Friday; he was also allowed a forty-five-minute break from 2:45 p.m. to 3:30 p.m. on Saturday and Sunday. This resulted in a total work week of approximately fifty-four hours and fifteen minutes (55.5 hours).

51.     From May 2016 to present, Defendants required Plaintiff Zhao to work according to the following schedule: Monday and Tuesday: 10:15 a.m. to 9:15 p.m.; Friday: 10:15 a.m. to 10:15 p.m.; Saturday: 11:15 a.m. to 10:30 p.m.; Sunday: 11:15 a.m. to 9:30 p.m.; he took Wednesday and Thursday off.

52.     In addition, Plaintiff was also required to drive commuting employees under the following schedule from Friday night to Tuesday morning: he had to drop off the last employee at 11:15 p.m. on Friday night, at 11:30 p.m. on Saturday night, at 10:30 p.m. on Sunday night, 10:15 p.m. on Monday night; he had to pick up the first employee at 10:15 a.m. on Saturday morning, 10:15 a.m. on Sunday morning, 9:15 a.m. on Monday morning, 9:15 a.m. on

Tuesday morning. (57.75 hours).

53.     Plaintiff was required to work for Defendants well in excess of forty (40) hours per week, frequently about fifty-five hours (55 hours) per week respectively, yet Defendants failed to pay Plaintiff all overtime compensation for hours he worked in excess of forty hours per week.

54.     Defendants illegally retained Plaintiff Zhao's tips on regular basis: Defendants retained 12% of his tips as the "internet order fee" (approximately $50) per week from April 2015 to February 20, 2017; and "housing account deduction" at an average amount of $50 per week from February 21, 2017 until now.

55.     Plaintiff Wang and other tipped employees also spent more than two-and-a-half (2.5) hours of their working time every day doing side works. For example, he was often asked to refill the sauce bottle, cooking salad, and to unpack delivery boxes after he arrived at the restaurant; he also spent one hour before lunch doing side works.

56.     To perform the delivery duties, Plaintiff Zhao spent on his own expense about $66 per week on gas, oil change, $1,800 to $1,900 per year on repair and maintenance of the vehicle, and $100 per year on traffic or parking tickets.  At all relevant times, the Defendants had a policy and practice of giving a $5-per-single-ride stipend if Plaintiff drove employees.

***Plaintiff Cheng Bin Shang***

57.     Plaintiff Shang was employed by Defendants from September 2013 to present as both a helper and delivery person at Kira Sushi.

58.     As indicated by his paystub, from September 2013 to February 14, 2015, he was paid approximately $575 per week; from February 15, 2015 to January 2016, Plaintiff Shang was paid $5.78 per hour for the first forty hours during a work week, $10.27 for part of

the hours exceeding forty; from February 2016 to January 2017, $6.07 for the first forty, and $10.87 for part of the hours exceeding forty; from $6.25 for the first forty, and $10.87 for part of the hours exceeding forty. However, Plaintiff Wang was not fully paid for all of the working hours listed in Paragraph 59 to Paragraph 63. From September 2013 to February 14, 2015, Plaintiff was paid in cash; from February 15, 2015 to present, Plaintiff Shang was typically paid weekly by check.

59.     From September 2013 to February 14, 2015, Defendants required Plaintiff Shang to work six days with Thursday off according to the following schedule: Monday through Wednesday: 10:10 a.m. to 9:30 p.m.; Friday: 10:10 a.m. to 10:30 p.m.; Saturday: 10:30 a.m. to 10:30 p.m.; Sunday: 10:30 a.m. to 10:00 p.m. Plaintiff Shang was not allowed any break. This resulted in a total work week of approximately seventy (70) hours for this period.

60.     Plaintiff Shang worked as a kitchen helper during the above-mentioned period, and is responsible for washing dishes, cutting vegetables, throwing away trash, sweeping the floor and making salads.

61.     From February 15, 2015 to April 2016, Defendants required Plaintiff Shang to work as a delivery person according to the following schedule: Monday or Tuesday through Wednesday: 10:00 a.m. to 9:30 p.m. with an hour break each day; Friday and Saturday: 10:00 a.m. to 10:30 p.m. with an hour break; Sunday: 4:00 p.m. to 10:00 p.m. without any break; he took one day off on either Monday or Tuesday. This resulted a total of sixty hours and thirty minutes (60.5 hours) working time during the above-mentioned period.

62.     From May 2016 to present, Defendants required Plaintiff Shang to work as a delivery person according to the following schedule: Monday through Friday: 10:40 a.m. to 9:30 p.m. with an hour break each day; Saturday: 10:30 a.m. to 11:30 p.m.; Sunday: 3:30 p.m. to

10:00 p.m. without any break; he took one day off on Tuesday.

63.     In addition, during this period, Plaintiff Shang was also required to drive commuting employees and to transport ingredients under the following schedule from Monday to Friday: he had to upload the ingredient onto his vehicle at 10:00 a.m. on Monday, and at 10:10 a.m. on Wednesday. He had to both upload ingredients and pick up the first employee at 9:10 a.m. on Thursday and Friday. On Wednesday and Thursday night, he dropped the last employee at approximately 10:30 p.m. on both days; This resulted in a total work week of approximately sixty hours and thirty minutes (66.5 hours).

64.     Plaintiff was required to work for Defendants well in excess of forty (40) hours per week, frequently about sixty hours (60 hours) per week respectively, yet Defendants failed to pay Plaintiff all overtime compensation for hours he worked in excess of forty hours per week.

65.     From February 15, 2015 to present, Defendants illegally retained Plaintiff Shang's tips on regular basis: Defendants deducted from his tips approximately $50 to $60 per week.

66.     Plaintiff Shang and other tipped employees also spent more than two-and-a-half (2.5) hours of their working time every day doing side works. For example, he spent one-and-a-half hours doing side works like refilling the sauce bottle after he arrived at the restaurant; he also spent one hour before lunch doing side works.

67.     To perform the delivery duties, Plaintiff Shang spent on his own expense about $60 per week on gas, oil change, $1,500 to $2,000 per year on repair and maintenance of the vehicle, and $500 per year on traffic or parking tickets.  At all relevant times, the Defendants had a policy and practice of giving a $5-per-single-ride stipend if Plaintiff drove employees.

*Plaintiff Bing Wang*

68.     Plaintiff Wang was employed by Defendants from November 9, 2015 to present as a delivery person at Kira Sushi.

69.     As indicated by his paystub, from November 2015 to the end of 2015, Plaintiff Wang was paid $5.78 per hour for the first forty hours during a work week, $10.27 for part of the hours exceeding forty; during the year of 2016, $6.07 for the first forty, and $10.87 for part of the hours exceeding forty; during the year of 2017 and 2018, $6.38 for the first forty, and $11.43 for the part of the hours exceeding forty. However, Plaintiff Wang was not fully paid for all of the working hours listed in Paragraph 70 to Paragraph 72. Plaintiff Wang was typically paid weekly by check.

70.     From November 9, 2015 to July 2016, Defendants required Plaintiff Wang to work six days with Monday off according to the following schedule: Tuesday through Thursday: 10:10 a.m. to 9:30 p.m.; Friday: 10:10 a.m. to 10:30 p.m.; Saturday: 11:10 a.m. to 10:40 p.m.; Sunday: 4:10 p.m. to 10:00 p.m. Plaintiff Shang was not allowed any break. This resulted in a total work week of approximately sixty-three (63) hours for this period.

71.     From August 2016 to present, Defendants required Plaintiff Wang to work six days with Monday off according to the following schedule: Tuesday through Thursday: 10:10 a.m. to 9:30 p.m.; Friday: 11:10 a.m. to 10:30 p.m.; Saturday: 11:10 a.m. to 10:40 p.m.; Sunday: 4:10 p.m. to 10:00 p.m. Plaintiff Wang was not allowed any break.

72.     In addition, during this period, Plaintiff Wang was also required to drive commuting employees either on Tuesday night and Wednesday morning or Saturday night and Sunday morning. If he was asked to drive on Tuesday and Wednesday, he would drop off the last employee at 10:30 p.m. and pick up the first employee at 9:00 a.m.; if he was asked to drive on

Saturday and Sunday, he dropped off the last employee at 11:50 p.m. and picked up the first employee at 3:15 p.m. This resulted in a total work week of approximately sixty-five (65) hours.

73.      Defendants illegally retained Plaintiff Wang's tips on regular basis: Defendants deducted from his tips approximately $60 per week from November 9, 2015 to February 19, 2017; Defendants made a $50 "House Account Deduction" from his and other tipped employees' tips every week from February 20, 2017 to present.

74.      Plaintiff Wang and other tipped employees also spent more than two-and-a-half (2.5) hours of their working time every day doing side works. For example, he spent one-and-a-half hours doing side works like refilling the sauce bottle after he arrived at the restaurant; he also spent one hour before lunch doing side works.

75.      Plaintiff was required to work for Defendants well in excess of forty (40) hours per week, frequently about Sixty-three hours (63 hours) per week respectively, yet Defendants failed to pay Plaintiff all overtime compensation for hours he worked in excess of forty hours per week.

76.      To perform the delivery duties, Plaintiff Wang spent on his own expense about $60 per week on gas, oil change, $1,500 to $2,000 per year on repair and maintenance of the vehicle, and $500 per year on traffic or parking tickets, Plaintiff Wang also bought a new vehicle at $29,300 to perform his delivery duties on December 13, 2017.  At all relevant times, the Defendants had a policy and practice of giving a $5-per-siggle-ride stipend if Plaintiff drove employees.

77.      Defendants willfully failed to post a notice explaining the Fair Labor Standards Act in a conspicuous place in the workplace, as prescribed by the Wage and Hour Division of the U.S. Department of Labor and required by 29 C.F.R. § 516.4.

78.     Defendants, in contravention of Conn. Gen. Stat. § 31-66, willfully failed to post a notice of the restaurant minimum wage order, Conn. State Agencies Regs. § 31-62-El, and of regulations issued by the Labor Commissioner of the State of Connecticut.

79.      Defendants, in contravention of Conn. Gen. Stat. § 31-71f, willfully failed to post a notice in a place accessible to employees with employment practices and policies with regard to wages, vacation pay, sick leave, health and welfare benefits and comparable matters. Defendants also failed otherwise to make such information available to employees in writing.

80.     Defendants also willfully violated the provisions of Conn. Gen. Stat. § 31-71f by failing to advise employees in writing, at the time of hiring, of the rate of remuneration, hours of employment and wage payment schedules.

81.     Plaintiffs' work was performed in the normal course of the Defendants' business and was integrated into the business of Defendants.

82.     The work performed by Plaintiffs required little skill and no capital investment.

83.     Plaintiffs did not supervise other employees, did not have hiring and firing authority and his job duties did not include managerial responsibilities or the exercise of independent business judgment.

## **STATEMENT OF CLAIMS**

### *FIRST CLAIM FOR RELIEF:*

### *FAIR LABOR STANDARDS ACT*

84.     Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set

forth herein.

85.     At all relevant times Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

86.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

87.     Upon information and belief, at all relevant times, the Corporate Defendants have each had gross revenues in excess of $500,000.

88.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §216(b). The named Plaintiffs' written consent is attached hereto and incorporated by reference.

89.     At all relevant times, the Defendants had a policy and practice of refusing to pay minimum wages for all hours worked as well as overtime compensation to its employees for their hours worked in excess of forty hours per workweek.

90.     Defendants willfully failed to pay its employees, including Plaintiffs and the Collective Action members,  the federal statutory minimum wage throughout his entire employment in violation of 29 U.S.C. § 206(a)(1).

91.     Defendants willfully retained part of the earned gratuities from Plaintiffs and the Collective Action Members in violation of 29 C.F.R. 531.52, and the FLSA, 29 U.S.C. §203(m).

92.     As a result of the Defendants' willful failure to compensate its employees, including Plaintiffs and the Collective Action members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, the

Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 207(a) (1).

93.     As a result of the Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action members, the Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA,  29 U.S.C. § 211(c).

94.     At all relevant times, Defendants had a policy and practice of refusing to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs in order to deliver food to customers of Defendants.

95.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

96.     Defendants are jointly and severally liable to all delivery workers for violations of their rights under federal law.

97.     Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the Collective Action members, are entitled to recover from Defendants their unpaid wages, unpaid minimum wages, their unpaid overtime compensation, an additional amount equal as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### SECOND CLAIM FOR RELIEF:

### CONNECTICUT WAGE AND HOUR LAW

98.     Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeat and re-allege each and every

allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

99.     At all relevant times, Plaintiffs and the members of the Class were employed by the Defendants within the meaning of Conn. Gen. Stat. § 31-58(f).

100.     Defendants willfully violated Plaintiffs' rights and the rights of the members of the Class by failing to pay them compensation for all hours worked, the state statutory minimum wage as well as overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of Conn. Gen. Stat. §§31-60, 31-76C.

101.     Defendants willfully failed to distribute accurate records of hours worked, earnings and overtime to the restaurant workers, in violation of Conn. Gen. Stat. § 31-13a.

102.     Defendants willfully failed to keep accurate records of hours worked by the restaurant workers, in violation of Conn. Gen. Stat. § 31-66.

103.     Defendants willfully withheld certain portion of wages and tips from employees without being empowered by law or authorized by the employee, in violation of Conn. Gen. Stat. § 31-71e.

104.     Defendants willfully failed to post a notice of the restaurant minimum wage order, Conn. State Agencies § 31-62-E1 and of regulations issued by the Labor Commissioner of the State of Connecticut, in violation of Conn. Gen. Stat. § 31-66.

105.     Defendants willfully failed to post a notice with employment practices and policies with regard to wages, vacation pay, sick leave, health and welfare benefits and comparable matters, in violation of Conn. Gen. Stat. § 31-71f.

106.     Defendants willfully failed to advise employees in writing, at the time of

hiring, of the rate of remuneration, hours of employment and wage payment schedules, in violation of Conn. Gen. Stat. § 31-71f.

107.    Defendants willfully failed to provide 30 consecutive minutes for a meal within a seven and one-half hour time period, in violation of Conn. Gen. Stat. § 31-51ii(a).

108.    Because Defendants failed to post and keep posted a notice explaining Connecticut's Wage and Hour Law in conspicuous places in their establishment, so as to permit their employees to readily observe a copy, and because the Plaintiffs had no other knowledge, actual or constructive, of their rights under Connecticut Wage and Hour Law, Plaintiffs are entitled to the equitable tolling of their Connecticut Wage and Hour Law claims.

109.    As a result of these violations, all restaurant works suffered damages.

110.    Defendants are jointly and severally liable to all restaurant workers for violations of their rights under state law.

111.    Due to the Defendants' CMWA violations, Plaintiffs and the members of the Class are entitled to recover from Defendants twice amount of their unpaid wages, unpaid minimum wages and unpaid overtime compensation, interests, damages for unreasonably delayed payment of wages, reasonable attorneys' fees and costs and disbursements of the action, pursuant to Conn. Gen. Stat. §§ 31-68(a), 31-76.

### THIRD CLAIM FOR RELIEF:

### BREACH OF CONTRACT

112.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeats, re-allege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

113.    Defendants collectively entered into oral, written, and/or implied contracts

with delivery workers and each party's acceptance was supported by good and valuable consideration.

114.    Plaintiffs fulfilled their contractual obligations by laboring for the benefit of Defendants.

115.    Defendants breached the contracts with Plaintiffs by failing to pay contractually established wages for work performed by Plaintiffs.

116.    Defendants' contracts with Plaintiffs implied payment of overtime wages, in accord with federal and state law.

117.    Because of Defendants' breach of contract, Plaintiffs suffered from a loss of expected wages.

118.    Plaintiffs are entitled to damages for Defendants' contract breaches for 6 years preceding the filing of this complaint, pursuant to Conn. Gen. Stat. §§ 52-576.

119.    Plaintiffs are entitled to monetary damages equal to the amount specified in oral, written, and/or implied contracts entered with Defendants, plus interest.

### FOURTH CLAIM FOR RELIEF:

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

120.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

121.    Defendants collectively entered into written and/or oral contracts with Plaintiffs and each party's acceptance was supported by good and valuable consideration.

122.    Plaintiffs fulfilled their contractual obligations by laboring for the benefit

of Defendants.

123.    Defendants, in bad faith, denied Plaintiffs the benefit of the contract by failing to pay the contractually established wages.

124.    Defendants' bad faith is demonstrated by Defendant's failure to pay contractually required wages, failure to pay statutorily mandated overtime, and by Defendants' manipulation of payment schedules that were to the detriment of Plaintiffs.

125.    Because of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs suffered from a loss of expected wages.

126.    Plaintiffs are entitled to damages for Defendants' contract breaches for 6 years preceding the filing of this complaint, pursuant to Conn. Gen. Stat. §§ 52-576.

127.    Plaintiffs are entitled to monetary damages equal to the amount specified in contracts entered with Defendants, plus interest.

### FIFTH CLAIM FOR RELIEF:

### UNJUST ENRICHMENT & QUANTUM MERUIT

128.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

129.    By laboring at Defendants' five restaurants, Plaintiffs provided benefits to Defendants.

130.    Plaintiffs expected to be compensated for the labor they provided to Defendants. Defendants' unjust failure to pay Plaintiffs wages for all labor performed constituted a distinct detriment to the Plaintiffs.

131.    Accordingly, Plaintiffs are entitled to money damages equal to the reasonable value of the labor provided to Defendants, plus interest.

### SIXTH CLAIM FOR RELIEF:

### FAILURE TO REIMBURSE EXPENSES RELATING TO TOOLS OF THE TRADE

132.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeat and re-allege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

133.    At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiff for expenses incurred in relation to tools of the trade used by Plaintiff in order to deliver food to customers of Defendants.

134.    Defendants failed to pay Plaintiffs for expenses incurred in relation to tools of the trade, that is, gas, oil change, car maintenance and repair, and tickets.  At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs in order to deliver food to customers of Defendants.

135.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs when Defendants knew or should have known such was due.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class, respectfully request that this Court grant

the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

c. An order tolling the statute of limitations;

d. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the CMWA;

e. An injunction against the Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f. An award of overtime compensation, minimum wages, work-related expenses, and illegally retained portion of tips due under the FLSA and the CMWA;

g. An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay for all hours worked as well as overtime compensation pursuant to 29 U.S.C § 216 and the CMWA;

h.   An award of damages arising out of the non-payment of wages;

i.   An award of prejudgment and post-judgment interest;

j.   Award Plaintiffs compensatory damages for Defendants' violations of Connecticut common law (including breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of contract implied through quantum meruit), plus interest;

k.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.   Such other and further relief as this Court deems just and proper.

Dated:  Flushing, New York January 26, 2018          HANG & ASSOCIATES, PLLC.

*S/JIAN HANG*
Jian Hang (ct29549)
136-20 38th Ave., Suite 10G
Flushing, New York 11354
Tel: 718.353.8588
jhang@hanglaw.com

*Attorneys for Plaintiffs*

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

     I am an employee currently or formerly employed by Kira Sushi 2 LLC and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_____
Full Legal Name (Print)

Teng Zuo
_____
Signature

Teng Zuo
_____
Date

03/ 11/ 2017

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Kira Sushi 2 LLC and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

YIXIN ZHAO

Full Legal Name (Print)

Signature

03/09/2017

Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Kira Sushi 2 LLC and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

ZHI QIANG WANG
Full Legal Name (Print)

ZHI QIANG WANG
Signature

1 - 18 - 2018
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Kira Sushi 2 LLC and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

BING WANG
Full Legal Name (Print)

BING WANG
Signature

01/22/18
Date

**CONSENT TO SUE UNDER
FEDERAL FAIR LABOR STANDARDS ACT**

   I am an employee currently or formerly employed by Kira Sushi 2 LLC and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*CHENG BIN SHANG*
Full Legal Name (Print)

*cheng bin shan*.
Signature

*03/12/17*
Date